UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

JERMAINE CRANMORE, on behalf of himself and
all others similarly situated,

                              Plaintiff,

              -against-

 

PARTS AUTHORITY, LLC, PARTS AUTHORITY-
WAW LLC, DRA LOGISTICS CORP. d/b/a
WORKFORCE, and 130 ST EQUITIES LLC d/b/a
WORKFORCE,

                             Defendants.

---------------------------------------------------------------------- X

**CLASS AND
COLLECTIVE ACTION
COMPLAINT**

       Plaintiff Jermaine Cranmore ("Plaintiff" or "Cranmore"), on behalf of himself and all others similarly situated, by his attorneys Pechman Law Group PLLC, complaining of Defendants Parts Authority LLC, Parts Authority-WAW LLC, DRA Logistics Corp. d/b/a Workforce, and 130 St Equities LLC d/b/a Workforce (collectively, "Defendants"), alleges:

**NATURE OF THE COMPLAINT**

       1.     Defendants recruited Cranmore and other recent immigrants from Guyana to work at Parts Authority's Bronx warehouse based on their actual and perceived immigration statuses and discriminated against them by paying them subminimum wages at hourly rates lower than those of other Parts Authority workers with different actual or perceived immigration statuses performing the same jobs at the same location under the supervision of the same managers.

       2.     Throughout their employment at Parts Authority's Bronx warehouse, Cranmore and other similarly situated warehouse workers worked up to eighty-four hours per workweek but were paid regular hourly wage rates that fell below the statutory

minimum wage rate and were not compensated with overtime pay for hours worked over forty each workweek. Defendants also unlawfully required Cranmore and other warehouse workers to pay mandatory transportation fees and failed to provide Cranmore and other warehouse workers with: (1) spread-of-hours pay when they worked shifts spanning over ten hours; (2) wage notices at their time of hiring and when their wage rates changed; and (3) accurate wage statements with each payment of wages.

3.　　Cranmore brings this action on behalf of himself and all similarly situated warehouse workers (the "Warehouse Workers") seeking declaratory and injunctive relief and to recover unpaid minimum and overtime wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York Labor Law § 190, *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA"). Cranmore further brings this action seeking declaratory and injunctive relief and monetary damages to redress Defendants' unlawful discrimination on the basis of actual and perceived immigration status in violation of the New York Equal Pay Act, NYLL § 194 ("NYEPA"), the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Admin. Code § 8-107 *et seq.* ("NYCHRL").

## JURISDICTION

4.　　This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and it has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367.

## VENUE

5.　　Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events and omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

**Plaintiff Jermaine Cranmore**

6.      Cranmore resides in Queens County, New York.

7.      Defendants employed Cranmore as a warehouse worker at Parts Authority's 1601 Bronxdale Avenue warehouse from approximately May 2022 through February 2023, and again from approximately September 2023 until mid-April 2024.

**The Parts Authority Defendants**

8.      Defendant Parts Authority LLC is Delaware limited liability company registered in New York.

9.      Defendant Parts Authority-WAW LLC ("Parts Authority WAW") is a New York limited liability company.

10.      Parts Authority LLC and Parts Authority WAW (collectively, the "Parts Authority Defendants") own, operate, and do business as Parts Authority, a "national distributor of automotive replacement parts, tools/equipment, and transmissions." *See* https://partsauthority.com/about (last accessed July 30, 2024).

11.      On information and belief, the Parts Authority Defendants jointly own and operate the Parts Authority warehouse located at 1601 Bronxdale Avenue, Bronx, New York 10462 (the "Bronx Warehouse"), where Cranmore and the Warehouse Workers were employed.

12.      United States Occupational Health and Safety ("OSHA") records reflect that Parts Authority LLC operates the Bronx Warehouse.

13.      Parts Authority WAW maintains a lease for the Bronx Warehouse premises.

14.      The Parts Authority Defendants have employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on

goods or materials that have been moved in or produced for commerce by any person within the meaning of the FLSA.

15.    In the three years prior to the filing of this Complaint, the Parts Authority Defendants, individually and collectively, have had an annual gross volume of sales made or business done in excess of $500,000.

16.    The Parts Authority Defendants are employers within the meanings of the FLSA, NYLL, NYEPA, NYSHRL, and NYCHRL and employed Cranmore and the Warehouse Workers.

**The Workforce Defendants**

17.    Defendant DRA Logistics Corp. ("DRA Logistics") is a New York corporation with a service of process address located at 143-18 102nd Avenue, Jamaica, New York 11435 doing business as Workforce.

18.    Defendant 130 St Equities LLC ("130 St Equities," and together with DRA Logistics, the "Workforce Defendants") is a New York limited liability company with headquarters located at 99-53 211th Street, Queens Village, New York 11419 doing business as Workforce.

19.    On information and belief, DRA Logistics and 130 St Equities jointly operate as Workforce, a company which recruits and provides Warehouse Workers for Parts Authority.

20.    Throughout his employment, Defendants paid Cranmore's wages on checks issued by both DRA Logistics and 130 St Equities.

21.    The Workforce Defendants have employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person within the meaning of the FLSA.

22.     In the three years preceding the filing of this Complaint, the Workforce Defendants, individually and collectively, have had an annual gross volume of sales made or business done in excess of $500,000.

23.     The Workforce Defendants are employers within the meaning of the FLSA, NYLL, NYEPA, NYSHRL, and NYCHRL and employed Cranmore and the Warehouse Workers.

## FACTUAL ALLEGATIONS

24.     Defendants employed Cranmore as a car parts stocker and scanner at the Bronx Warehouse throughout his employment.

25.     Initially, Cranmore's duties involved categorizing and stocking car parts at the Bronx Warehouse.

26.     Later, Defendants moved Cranmore to the "Hot Shot" unit at the Bronx Warehouse, where he was responsible for scanning car parts that were ready for shipment.

27.     From approximately May 2022 through February 2023, Cranmore regularly worked nine-hour shifts, from 5:00 p.m. to 2:00 a.m., six days per week (Fridays off), totaling approximately fifty-four hours per workweek.

28.     However, Defendants frequently required Cranmore to extend his shifts until 4:00 a.m. during this period, resulting in Cranmore working up to sixty-six hours per workweek.

29.     Moreover, during the busy summer period in approximately July and August 2022, Cranmore regularly worked seven days per week, from 2:00 p.m. to 2:00 a.m., totaling approximately eight-four hours per workweek during this period.

30.     From approximately September 2023 through mid-April 2024, Cranmore regularly worked: (1) ten-hour shifts, from 8:00 a.m. to 6:00 p.m., four days per week

(Monday through Thursday); (2) a nine-hour shift, from 8:00 a.m. to 5:00 p.m., on Fridays; and (3) a seven-hour shift, from 8:00 a.m. to 3:00 p.m., on Saturdays, totaling approximately fifty-six hours per workweek.

31.     However, Cranmore frequently worked an additional two or three hours on Fridays during this period, totaling approximately fifty-eight or fifty-nine hours per workweek on weeks when he worked the longer Friday shifts.

32.     From approximately May 2022 through February 2023, Defendants paid Cranmore $13 per hour for all hours worked, including hours over forty per workweek.

33.     When Cranmore complained about his low pay to Workforce owner and supervisor Sean, Sean told Cranmore that he and the other night shift Warehouse Workers were "lucky" to receive $13 per hour.

34.     From approximately September 2023 through the end of his employment, Defendants paid Cranmore $14 per hour for all hours worked, including hours over forty per workweek.

35.     At points during Cranmore's employment, Defendants required Cranmore and the Warehouse Workers to meet at designated pick-up locations in Queens and ride in vans from the pick-up location to the Bronx Warehouse.

36.     Defendants also required Cranmore and other Warehouse Workers to ride the vans home at the end of their shifts.

37.     Defendants unlawfully required Cranmore and the Warehouse Workers to pay $10 per day for this mandatory van transportation (hereinafter, the "Transportation Expenses").

38.     Cranmore and the Warehouse Workers paid the Transportation Expenses on a weekly basis to Parts Authority and Workforce supervisors, including Ryan and Dane Rupal.

39.    Cranmore was able to convince Defendants to allow him to arrange for his own transportation to work after the birth of his child.  However, the van transportation and payment of the Transportation Expenses remained mandatory for other Warehouse Workers.

40.    Irrespective of Defendants' unlawful charging of Transportation Expenses, Cranmore and the Warehouse Workers' regular hourly wage rates fell below the statutory minimum wage rate established for employers in New York City throughout their respective employment periods with Defendants.

41.    Defendants failed to pay Cranmore and the Warehouse Workers overtime wages for hours worked over forty per workweek.

42.    Defendants failed to pay Cranmore and the Warehouse Workers spread-of-hours pay, an additional hour's pay at the basic minimum wage rate, on days when they worked shifts spanning in excess of ten hours.

43.    Defendants did not use a punch-in/punch-out or other time-keeping system to record Cranmore and the Warehouse Workers' hours worked.

44.    Defendants did not provide Cranmore and the Warehouse Workers with a wage notice at their time of hire or when their rates of pay changed.

45.    Defendants paid Cranmore and the Warehouse Workers wages by checks issued by either DRA Logistics and 130 St Equities on a weekly basis, often by issuing one check for up to $600 and a second check for any additional wages over $600 paid for the workweek.

46.    Defendants did not provide Cranmore and the Warehouse Workers with accurate wage statements accompanying each payment of wages.

47.    Defendants intentionally failed to provide wage notices and statements to Cranmore and the Warehouse Workers in violation of the WTPA to conceal the precise

number of regular and overtime hours that Cranmore and the Warehouse Workers worked and the statutory minimum and overtime wages rates to which they were entitled. By failing to issue Cranmore and Warehouse Workers wage statements with their correct wage rates due, Defendants failed to pay them their correct wages due. Defendants further concealed their practice of wage underpayments by failing to provide Cranmore and Warehouse Workers with the required wage notice under the NYLL, which would have permitted the employees to know of their rights to correct wages due.

48.    Defendants' WTPA violations led to and formed part of Defendants' scheme to deprive Cranmore and the Warehouse Workers of their minimum and overtime wages due as alleged in this Complaint.

**The Parts Authority and Workforce Defendants Jointly Employed Cranmore and the Warehouse Workers Through a Subcontracting Scheme to Deny Them Lawful Wages**

49.    Throughout Cranmore and the Warehouse Worker's employment, the Parts Authority and Workforce Defendants engaged in a subcontracting scheme designed to avoid including Cranmore and the Warehouse Workers on Parts Authority's standard payroll and deny them required minimum and overtime wages.

50.    Specifically, the Workforce Defendants targeted Cranmore and the other Warehouse Workers based on their actual and perceived immigration statuses to provide labor to the Parts Authority Defendants at the Bronx Warehouse at unlawfully reduced rates.

51.    Although the owners and supervisors of the Workforce Defendants are of Guyanese national origin, they targeted Cranmore and other Warehouse Workers, most of whom were also of Guyanese national origin, based on their actual or perceived immigration statuses.

52.     As part of Defendants' subcontracting scheme, Defendants paid Cranmore and the Warehouse Workers' wages on checks issued by the Workforce Defendants while other Parts Authority workers performing the same jobs were paid on Part Authority payroll.

53.     Defendants paid Cranmore and the other Warehouse Workers on a straight-time basis at lower regular hourly rates than other Parts Authority workers performing the same jobs in the same location under the supervision of the same managers as Cranmore and the Warehouse Workers because of Cranmore and the Warehouse Workers' actual and perceived immigration statuses.

54.     On information and belief, if a Warehouse Worker's immigration status changed, Defendants stopped paying that worker on checks issued by the Workforce Defendants and began paying the worker through Parts Authority payroll.

55.     Both the Workforce Defendants and the Parts Authority Defendants jointly held and exercised the power and authority to control the terms and conditions of Cranmore and the Warehouse Worker's employment.

56.     For example, Workforce Defendant owners and supervisors, including Sean, Ryan, and Sudesh were responsible for hiring Cranmore and the Warehouse Workers to work at the Bronx Warehouse, communicating information about their pay rates and schedules, and distributing their pay.

57.     Both the Workforce Defendants and Parts Authority Defendants supervised Cranmore and the Warehouse Workers' day-to-day duties and held and exercised authority to discipline Cranmore and the Warehouse Workers.

58.     Cranmore and the Warehouse Workers performed the same job duties with the same job titles under the supervision of the same Parts Authority supervisors,

including Parts Authority Supervisor Daryl Ramessar ("Daryl"), as Parts Authority employees who were formally on payroll and receiving different pay rates.

59.    For example, during the period that Cranmore worked in the Hot Shot department, there were approximately thirty-five other workers performing the same duties as him, of whom eight were Warehouse Workers recruited and paid by the Workforce Defendants and the remainder of whom were paid through Parts Authority payroll.

60.    Cranmore and the Warehouse Workers used equipment owned and provided by the Parts Authority Defendants to complete their jobs, including Parts Authority scanners and forklifts.

61.    The Parts Authority Defendants provided training to Cranmore and the Warehouse Workers by having them shadow Parts Authority employees to learn their duties and responsibilities.

62.    For example, Cranmore was trained by a Parts Authority employee named Lance.

63.    Both Workforce and Parts Authority Defendant supervisors monitored the work performed by Cranmore and the Warehouse Workers.

64.    For example, Parts Authority supervisor Daryl supervised the duties performed by Cranmore, the Warehouse Workers, and Parts Authority direct employees who were performing the same jobs by providing instructions and correcting mistakes.

65.    Parts Authority supervisors, including Daryl, held and exercised the authority to transfer Warehouse Workers between different department and job duties at the Bronx Warehouse.

66.    Parts Authority supervisors, including Daryl, held and exercised the authority to discipline and fire Cranmore and the Warehouse Workers.

67.    For example, after Cranmore's wife, who was paid through Parts Authority's direct payroll, rejected sexual advances made to her by Daryl, Daryl began retaliating against Cranmore because of the rejection.

68.    When Daryl became aware that Cranmore had taken personal leave that he confirmed with Workforce supervisor Terry and Parts Authority supervisor Lance to take his son to the hospital, Daryl suspended Cranmore from work for one week.

69.    Later, when Cranmore had to leave work to take his wife to the hospital because she was suffering an asthma attack, Daryl again suspended Cranmore for a week.

70.    Finally, after Cranmore took leave to take his vehicle to the mechanic for repairs and to the Department of Motor Vehicles, Daryl informed Parts Authority General Manager Azam that Cranmore should be terminated.  On information and belief, Azam then informed Workforce owner and supervisor Sean that Cranmore's employment was terminated, and Sean informed Cranmore directly that he was fired.

71.    Cranmore and the Warehouse Workers exclusively performed work for Parts Authority facilities on a full time basis, and were not assigned by the Workforce Defendants to work for other car parts distributors.

72.    Cranmore and the Warehouse Workers performed the same duties in the same warehouse under the supervision of the same Parts Authority supervisors as direct Parts Authority employees, but they were paid by the Workforce Defendants at a subminimum wage rate and without overtime pay as part of Defendants' scheme to unlawfully deprive Cranmore and the Warehouse Workers of the wages to which they were entitled.

73.    Indeed, similar schemes by the Parts Authority Defendants have previously been the subject of both federal litigation and an investigation by the United States Department of Labor.  *See, e.g., Johnson v. Parts Auth., LLC*, No. 16 Civ. 6852 (DLI) (RML)

(E.D.N.Y); *Diaz et al. v. Mich. Logistics Inc. et al.*, No. 2:15 Civ. 1415 (LDW) (ARL) (E.D.N.Y.); *Henao et al. v. Parts Auth., LLC, et al.*, No. 19 Civ. 10720 (LGS) (BCM) (S.D.N.Y.); U.S. DEPARTMENT OF LABOR, "Department of Labor Obtains Judgment Ordering Auto Parts Seller, Logistics Company to Pay $5.6 Million to 1,398 Misclassified Drivers," (https://www.dol.gov/newsroom/releases/whd/whd20230112) (last accessed June 3, 2024).

## COLLECTIVE ACTION ALLEGATIONS

74.     Plaintiff brings this action on behalf of himself and all similarly situated Warehouse Workers who have worked for Defendants within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

75.     The FLSA Collective consists of approximately one hundred fifty workers who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia,* willfully denying the FLSA Collective overtime pay.

76.     Plaintiff and the FLSA Collective have worked over forty hours per workweek, have performed virtually the same duties, were paid on an hourly basis, and have been subjected to the Defendants' common unlawful pay policies and practices depriving them of overtime pay at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

77.     Defendants intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in patterns, practices, and policies violating the FLSA, including but not limited to: (1) failing to pay the FLSA Collective overtime wages for hours worked over forty per workweek; and (2) failing to keep full and accurate records of all hours worked by the FLSA Collective, as required by the FLSA.

78.     Defendants engaged in this unlawful conduct pursuant to corporate policies of minimizing labor costs and denying employees their compensation.

79.     Defendants are aware or should have been aware that the FLSA required them to pay the employees an overtime premium for hours worked in excess of forty per workweek.

80.     Defendants' wage payment practices have repeatedly been the subject federal litigation and a United States Department of Labor investigation.  *See* ¶ 73 *supra*.

81.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff and the FLSA Collective.

82.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated employees can be readily identified and located through Defendants' records. The similarly situated employees should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings the claims in this Complaint arising out of the NYLL, NYEPA, NYSHRL, and NYCHRL under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class consisting of all similarly situated Warehouse Workers who work or have worked for Defendants in the six years prior to the commencement of this Action (the "Rule 23 Class").

84.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

85.     The size of the Rule 23 Class is at least three hundred individuals, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of Defendants.

86.    Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

87.    Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

   a.    Whether Defendants violated the NYLL and supporting regulations with respect to compensation of the Rule 23 Class as alleged herein;

   b.    Whether Defendants maintained accurate records of hours worked and pay received by the Rule 23 Class as required by the NYLL;

   c.    Whether Defendants failed to pay minimum wages to the Rule 23 Class for all hours worked up to forty per workweek, as required by the NYLL;

   d.    Whether Defendants failed to pay overtime wages to the Rule 23 Class for hours worked in excess of forty per workweek, as required by the NYLL;

   e.    Whether Defendants failed to pay spread-of-hours pay to the Rule 23 Class per day worked that was longer than ten hours, as required by the NYLL

   f.    Whether Defendants failed to provide Plaintiff and the Rule 23 Class with wage notices and accurate wage statements as required by the NYLL and WTPA;

   g.    Whether Defendants discriminated against Plaintiff and the Rule 23 Class with respect to their method and rates of pay on the basis of their actual and perceived immigration statuses; and

   h.    Whether Plaintiff and the Rule 23 Class have sustained damages and, if so, the proper measure of such damages.

88.    Plaintiff's claims are typical of the claims of the Rule 23 Class he seeks to represent. Plaintiff and the members of the Rule 23 Class work or have worked for Defendants at various times within the applicable statutory period. They enjoy the same statutory rights under the NYLL to be paid at the statutory minimum wage rate for hours up to forty and overtime rate for all hours worked over forty in a workweek. They enjoy

the same statutory rights under the NYEPA, NYSHRL, and NYCHRL to be free from discrimination on the basis of their actual and perceived immigration statuses in the terms and conditions of their employment. Plaintiff and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants failure to comply with the NYLL, NYEPA, NYSHRL, and NYCHRL.

89.     Plaintiff and the Rule 23 Class have all been injured in that they have been under-compensated and suffered discrimination in the terms and conditions of their employment due to Defendants common policies, practices, and patterns of conduct.

90.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

91.     Plaintiff has retained legal counsel competent and experienced in wage and hour, discrimination, and class action litigation.

92.     There is no conflict between Plaintiff and the Rule 23 Class members.

93.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual Rule 23 Class members lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

94. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### FIRST CLAIM
### (NYLL – Unpaid Minimum Wages)

95. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

96. Defendants are employers within the meaning of NYLL §§ 190(3), 651(6), and supporting New York State Department of Labor ("NYDOL") regulations and employed Plaintiff and the Rule 23 Class.

97. Before 2019, Defendants employed eleven or more employees, making them "large employers," both individually and collectively, under 12 N.Y.C.R.R. § 142–2.1(a)(1)(i).

98. The NYLL and supporting NYDOL regulations, including 12 N.Y.C.R.R. § 142-2.1, require employers to pay employees at least the minimum wage for each hour work up to forty per workweek.

99. Defendants willfully violated the NYLL by failing to pay Plaintiff and the Rule 23 Class minimum wages.

100. As a result of Defendants violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### SECOND CLAIM
### (FLSA – Unpaid Overtime Wages)

101. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

102. Defendants are employers within the meaning of 29 U.S.C. § 203(d) and 207(a) and employed Plaintiff and the FLSA Collective.

103. Defendants were required to pay Plaintiff and the FLSA Collective one and one-half (1½) times their regular hourly wage rates for all hours worked in excess of forty

hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

104.    Defendants failed to pay Plaintiff and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

105.    Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective the proper overtime wage rate.

106.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiff's and the FLSA Collective's compensation.

107.    As a result of Defendants violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### THIRD CLAIM
### (NYLL – Unpaid Overtime Wages)

108.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

109.    Under the NYLL and supporting NYDOL regulations, including 12 N.Y.C.R.R. § 142-2.2, Defendants were required to pay Plaintiff and the Rule 23 Class one and one-half (1 ½) times their regular rates of pay for all hours worked over forty per workweek.

110.    Defendants failed to pay Plaintiff and the Rule 23 Class the overtime wages to which they were entitled under the NYLL and its supporting regulations.

111.    Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiff and the Rule 23 Class overtime wages.

112.    As a result of Defendants willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### FOURTH CLAIM
### (NYLL – Unpaid Spread-of-Hours Pay)

113.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

114.    Defendants willfully failed to pay Plaintiff and the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked shifts spanning over ten hours, in violation of the NYLL and its supporting NYDOL regulations, including 12 NYCRR § 142-2.4.

115.    As a result of Defendants willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### FIFTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Notices)

116.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

117.    The NYLL's WTPA requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

118.    In violation of NYLL § 195(1), Defendants failed to furnish Plaintiff and the Rule 23 Class at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the

employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

119.    As a result of Defendants' violations of NYLL § 195(1), Plaintiff and the Rule 23 Class are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1–b).

## SIXTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Statements)

120.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

121.    The NYLL's WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

122.    Defendants failed to provide Plaintiff and the Rule 23 Class with a wage statement at the end of every pay period accurately listing, *inter alia*, the regular and overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL § 195(3).

123.    As a result of Defendants' violations of NYLL § 195(3), Plaintiff and the Rule 23 Class are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

## SEVENTH CLAIM
### (NYLL – Unlawful Deductions from Wages)

124.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

125.    During the last six years, Plaintiff and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class within the meaning of the NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

126.    Defendants have deducted the Transportation Expenses of $10 per day from the wages of Plaintiff and the Rule 23 Class, bringing their already sub-minimum wages well below the applicable minimum wage rates.

127.    The Transportation Expenses were not permitted as deductions from wages under NYLL, Article 6, § 193.

128.    These payments were not authorized or required by law and were not expressly authorized in writing by and for the benefit of Plaintiff and the Rule 23 Class.

129.    Defendants willfully violated NYLL, Article 6, § 193 *et seq.*, and its supporting NYDOL Regulations by knowingly and intentionally deducting the Transportation Expenses from the wages of Plaintiff and the Rule 23 Class.

130.    Due to Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**EIGHTH CLAIM**
**(NYEPA – NYLL § 194 – Equal Pay Discrimination)**

131.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

132.    Defendants were employers within the meaning of the NYEPA and employed Plaintiff and the Rule 23 Class.

133.    The NYEPA prohibits employers from paying employees with status in one or more protected classes a wage at a rate less than the rate at which an employee without status in the same protected class is paid of equal or substantially similar work.

134.    Immigration status is a protected class under the NYEPA.  *See* NYLL § 194(2) and N.Y. Exec. L. § 296-1(a).

135.    Defendants violated the NYEPA as set forth in this Complaint by discriminating against Plaintiff and the Rule 23 Class on the basis of their actual and perceived immigration statuses by paying them wages at lower rates than employees with different actual or perceived immigration statuses.

136.    As a result of Defendants' unlawful discrimination against Plaintiff and the Rule 23 Class in violation of the NYEPA, Plaintiff and the Rule 23 Class are entitled to recover compensatory damages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs pursuant to NYLL § 198.

## NINTH CLAIM
### (NYSHRL – Discrimination)

137.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

138.    Defendants were employers within the meaning of the NYSHRL and employed Plaintiff and the Rule 23 Class.

139.    The NYSHRL prohibits employers from discriminating against any employee because of immigration status in the employee's terms, conditions, or privileges of employment.  N.Y. Exec. L. § 296-1(a).

140.    Defendants discriminated against Plaintiff and the Rule 23 Class on the basis of actual and perceived immigration status in violation of the NYSHRL, by denying Plaintiffs equal terms and conditions of employment as described above.

141.    Defendants violated the NYSHRL as set forth in this Complaint by discriminating against Plaintiff and the Rule 23 Class on the basis of actual and perceived immigration statuses by paying them wages at lower rates than employees with different immigration statuses.

142.    Defendant's unlawful discrimination against Plaintiff and the Rule 23 Class was intentional or done with reckless indifference to the rights of Plaintiff and the Rule 23 Class.

143.    As a result of Defendants' unlawful discriminatory conduct, Plaintiff and the Rule 23 Class are entitled to all remedies under the NYSHRL including but not limited to compensatory and punitive damages and reasonable attorneys' fees and costs.

**TENTH CLAIM**
**(NYCHRL – Discrimination)**

144.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

145.    Defendants were employers within the meaning of the NYCHRL and employed Plaintiff and the Rule 23 Class.

146.    The NYCHRL prohibits employers from discriminating against any employee because of actual or perceived immigration status in the employee's terms, conditions, or privileges of employment.  N.Y.C. Admin. Code § 8-107-1.

147.    Defendants discriminated against Plaintiff and the Rule 23 Class on the basis of actual and perceived immigration status in violation of the NYCHRL, by denying Plaintiffs equal terms and conditions of employment as described above.

148.    Defendants violated the NYCHRL as set forth in this Complaint by discriminating against Plaintiff and the Rule 23 Class on the basis of actual and perceived immigration statuses by paying them wages at lower rates than employees with different immigration statuses.

149.    Defendant's unlawful discrimination against Plaintiff and the Rule 23 Class was intentional or done with reckless indifference to the rights of Plaintiff and the Rule 23 Class.

150.    As a result of Defendants' unlawful discriminatory conduct, Plaintiff and the Rule 23 Class are entitled to all remedies under the NYCHRL including but not limited to compensatory and punitive damages and reasonable attorneys' fees and costs.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective, and the Rule 23 Class, respectfully requests that this Court:

a.    certify this case as a collective action on behalf of the FLSA Collective described herein and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all prospective members of the FLSA Collective apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b.    certify this case as a class action pursuant to Rule 23 for the Rule 23 Class described herein, certify Plaintiff as the representative of the Rule 23 Class, and designate Plaintiff's counsel as Class Counsel;

c.    declare that Defendants have violated the minimum wage and no wage deductions provisions of the NYLL and supporting regulations;

d.    declare that Defendants have violated the overtime wage provisions of the FLSA, NYLL, and supporting regulations;

e.    declare that Defendant have violated the spread-of-hours provision of the NYLL and supporting regulations;

f.    declare that Defendants have violated the wage notice and wage statement provisions of the NYLL's WTPA;

g.    declare the Defendants engaged in unlawful discrimination in violation of the NYEPA, NYSHRL, and NYCHRL;

h.      declare that Defendants' violations of the FLSA, NYLL, NYEPA, and NYCHRL were willful;

i.      enjoin and permanently restrain Defendants from further violations of the FLSA, NYLL, NYEPA, NYSHRL, and NYCHRL;

j.      award Plaintiff and the Rule 23 Class damages for unpaid minimum wages and wage deductions;

k.      award Plaintiff, the FLSA Collective, and the Rule 23 Class damages for unpaid overtime wages;

l.      award Plaintiff and the Rule 23 Class damages for unpaid spread-of-hours pay;

m.      award Plaintiff, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

n.      award Plaintiff and the Rule 23 Class statutory damages as a result of Defendants failure to furnish wage notices and wage statements pursuant to the NYLL's WTPA;

o.      award Plaintiff and the Rule 23 Class compensatory damages as a result of Defendants' violations of the NYEPA, NYSHRL, and NYCHRL;

p.      award Plaintiff and the Rule 23 Class liquidated damages as a result of Defendants' violations of the NYEPA;

q.      award Plaintiff and the Rule 23 Class punitive damages as a result of Defendants' violations of the NYSHRL and NYCHRL;

r.      award Plaintiff, the FLSA Collective, and the Rule 23 Class pre- and post-judgment interest under the NYLL;

s.       award Plaintiff, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

t.      award such other and further relief as the Court deems just and

proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury in this action.

Dated:  New York, New York
       August 1, 2024

PECHMAN LAW GROUP PLLC

By: */s/ Louis Pechman*
    Louis Pechman
    Galen C. Baynes
    488 Madison Avenue, 17th Floor
    New York, New York 10022
    Tel.: (212) 583-9500
    pechman@pechmanlaw.com
    baynes@pechmanlaw.com
    *Attorneys for Plaintiff and the Putative*
    *FLSA Collective and Rule 23 Class*